## NAHARKEY v. SAND SPRINGS HOME.

No. 22179.   March 10, 1936.

Rehearing Denied June 30, 1936.

Poe, Lundy & Morgan, Earl Bohannon, and D. T. Mosier, for plaintiff in error.

C. B. Stuart, E. J. Doerner, P. P. Pinkerton, and B. A. Hamilton, for defendant in error.

BUSBY, J.   In this action the plaintiff, Millie Naharkey (referred to herein as

"Little" Millie Naharkey for the purpose of distinction), an incompetent, who is a three-quarters blood citizen of the Creek Nation, seeks through her guardian, the First National Bank & Trust Company, to recover from the Sand Springs Home, a corporation, a one-sixth interest in 80 acres of land described as the north one-half (N. ½) of the southwest quarter (S. W. ¼) of section two (2), township eighteen (18) north, range twelve (12) east, in Tulsa county.

It is admitted that the plaintiff was at one time the owner of the interest which she now claims and that she has not by voluntary and formal conveyance either personally or through a guardian divested herself of the title thereto. It is asserted, however, that she no longer owns the interest involved in the action by reason of a judgment in partition rendered in 1907 by the United States Court in the Indian Territory, Western District.

The judgment of the trial court in this case was for the defendant, and the plaintiff has appealed, appearing herein as plaintiff in error. We shall continue to refer to the parties as plaintiff and defendant, respectively.

The interest of the plaintiff in the land above described was acquired through inheritance from other enrolled citizens of the Creek Nation. The land is a part of the allotment of Millie Naharkey, a full-blood Creek (not the plaintiff herein), who is referred to in the record and in this opinion for the purpose of distinction as "Old Millie Naharkey." She died on the 2nd day of February, 1901, before the selection of the allotment. On the 28th day of October, 1901, her allotment was selected for her, and allotment deed was later made to her heirs, who were her husband, Mose Naharkey, a full-blood Creek, and the son of herself and Mose Naharkey, one Sammie Naharkey, also a full-blood Creek. Each of such heirs received an undivided one-half interest in the land in question by virtue of the Creek law. Eysenbach v. Naharkey, 114 Okla. 217, 246 P. 603.

This being a "dead claim," the lands thus inherited were, prior to the Act of April 26, 1906, unrestricted in the hands of the heirs. Mullen v. U. S., 56 L. Ed. 834, 224 U. S. 448; Skelton v. Dill, 235 U. S. 206, 59 L. Ed. 198. By section 22 of the Act of 1906 restrictions were reimposed on the lands of full-blood heirs thus inherited (Brader v. James, 49 Okla. 734, 154 P. 560, 246 U. S. 88, 62 L. Ed. 591; Sampson v. Stapleton, 55 Okla. 547, 155 P. 213; McCosar v. Chapman, 59 Okla. 78,

157 P. 1059; Bruner v. Nordmeyer, 64 Okla. 163, 166 P. 126; Cravens v. Amos, 64 Okla. 71, 166 P. 140; Moffett v. Conley, 63 Okla. 3, 163 P. 118; Parks v. Roach, 88 Okla. 19, 210 P. 402), although restrictions were not thereby reimposed on the unrestricted inherited lands of heirs less than full-blood. Burtschi v. Wolfe, 82 Okla. 27, 198 P. 306; Patterson v. Carter, 83 Okla. 70, 200 P. 855.

Thus, as applied to this case, the land herein involved was, prior to the Act of 1906, supra, unrestricted in the hands of Mose Naharkey and Sammie Naharkey, the full-blood heirs of Old Millie Naharkey. Before the Act of 1906, supra, became effective, Mose Naharkey died. The date of his death was about December, 1905. Prior to his death and subsequent to the death of his former wife, "Old Millie," he had married Martha Red, a half-blood Creek. Of this latter marriage one daughter was born, namely, Little Millie, the plaintiff herein. His heirs were Martha Red Naharkey, half-blood wife, Sammie Naharkey, a full-blood son, and Little Millie, three-quarters blood daughter, each of whom, by the applicable law of descent and distribution, received one-third of the one-half interest (the wife's one-third being in lieu of dower) owned by Mose in the land herein involved, which one-third of one-half in each instance constituted one-sixth of the whole. Eysenbach v. Naharkey, supra. Sammie's one-sixth, when added to the one-half previously inherited by him from "Old Millie," enlarged his interest. The title was thus distributed among the heirs: Sammie 4/6ths, Martha 1/6th, and Little Millie 1/6th. Sammie being a full-blood, restrictions upon alienation were reimposed in 1906 by section 22 of the Act of Congress of April 26th that year.

In January of 1907, Sammie Naharkey, as plaintiff, instituted an action in the United States Court for the Western District of Indian Territory against Martha Naharkey and Little Millie Naharkey, plaintiff herein (who was then about two years old), seeking a partition in kind of the land herein involved and other lands not involved in this litigation. Martha answered asking a one-third interest in lieu of dower. A guardian ad litem was appointed for Little Millie and an answer was filed in her behalf asking partition. On March 19, 1907, a decree in partition was entered as a result of which the 80 acres which is the subject-matter of this litigation was set aside and given in fee to Sammie. Other lands were given to Little Millie and Martha.

In the case of Eysenbach et al. v. Naharkey, 114 Okla. 217, 246 P. 603, supra

(former opinion same case 110 Okla. 207, 236 P. 619, petition for writ of certiorari denied by Supreme Court of United States, 269 U. S. 561, 70 L. Ed. 412), this court on collateral attack declared the judgment of the United States District Court for the Western District of Indian Territory void for want of jurisdiction of the subject-matter. The basis of our decision was that partition in kind of real estate inherited by full-blood citizens of the Creek Nation constituted an alienation thereof in violation of restrictions reimposed by section 22 of the Act of Congress of April 26, 1906.

It is urged by the defendant that our former decision was erroneous and that partition in kind does not constitute an alienation within the inhibition of the congressional act above mentioned. In support of, its contention defendant calls our attention to language appearing in a few decisions from other jurisdictions (not dealing with the statute under consideration) which lends some color to the argument. It is difficult, however, to escape the obvious conclusion that through partition proceedings the former owner of an undivided interest acquires the fee in a particular tract or portion of tract in exchange for an undivided interest in other tracts or portions of the same tract. Partition in kind is thus a form of forced trade or exchange, and, as such, an alienation. We so held in. Eysenbach v. Naharkey, supra, and we now decline to depart from the rule therein announced. See, also, Robinson v. Fair, 128 U. S. 53, 9 Sup. Ct. 30, 32 L. Ed. 415; Coleman v. Battiest, 65 Okla. 71, 162 P. 786; Lewis et al. v. Gillard, 70 Okla. 231, 173 P. 1136; Hoodenpyl v. Champion, 71 Okla. 270, 177 P. 369.

Neither can we agree with defendant that the view adopted in Eysenbach v. Naharkey, supra, is inconsistent with the general plan of administering Indian affairs as manifested by the various acts of Congress and the treaties with the different tribes.

It is also asserted that the want of jurisdiction of the United States Court for Indian Territory does not appear on the face of the judgment roll, and therefore a successful collateral attack cannot be maintained. This contention is based on the fact that while the judgment roll of the case in that court reflects the fact that the parties litigant were citizens of the Creek Nation, it does not reflect the quantum of Indian blood. It is argued that in order for the judgment to be void and. thus subject to a successful collateral attack, the fact that Sammie Naharkey was a full-blood would have to affirmatively appear from an inspection of the judgment roll. This for the reason that the quantum of Sammie's Indian blood is the basic fact which destroys the judgment. The question is one of grave concern. If it were one of first impression in this jurisdiction, it would merit a careful and exhaustive analysis. However, the contention is foreclosed by the prior decisions of this court. While the precise question was not discussed in Eysenbach v. Naharkey, supra, this same judgment was declared void in that case. The attack therein was also collateral. In the case of Lewis v. Gillard, 70 Okla. 231, 173 P. 1136, supra, it was decided that the failure of the judgment roll to disclose that heirs were full-blood Indians, **the fact which made a partition proceeding invalid,** did not prevent a successful collateral attack. The decision in that case was based upon the earlier case of Barnard v. Bilby, 68 Okla. 63, 171 P. 444, wherein upon collateral attack a probate sale of the allotted lands of a **minor Creek freedman** was declared invalid, notwithstanding the proceedings did not reflect on their face that the lands involved were those allotted to a minor Creek freedman.

It should be remembered in considering the weight of the foregoing decisions (especially the one last mentioned) and their controlling importance that in this state county courts are, in probate matters, courts of general jurisdiction (Tiger v. Drumright, 95 Okla. 174, 217 P. 453), which precludes a distinction upon the theory that upon collateral attack different rules govern the judgment of a court of limited jurisdiction. Perhaps the true basis for considering extrinsic facts not appearing on the face of the judgment roll in determining the validity of final judgments affecting the lands of Indians not alienable by reason of restrictions, is that such restrictions are imposed by the federal laws defining the public policy of the nation with respect to and for the protection of a class of individuals regarded as wards of the government, and because a recognition of the validity of such judgments would make the courts an instrumentality through which the end intended to be accomplished would be defeated. See Dial v. Kirkpatrick, 168 Okla. 21, 31 P. (2d) 591. Perhaps, too, clarity of legal thought would be promoted by a frank judicial recognition of the existence of an exception in this class of cases to the general rules governing collateral attack upon judgments upon which the defendant herein relies. That those rules are not without exception is undeniable. Personally the writer of this opinion is not altogether in sympathy with some of the exceptions rec-

ognized or applied without recognition. See dissents in Seal et al. v. Banes et al., 168 Okla. 550, 35 P. (2d) 704; Excise Board of LeFlore County v. K. C. So. Ry. Co., 173 Okla. 238, 47 P. (2d) 580.

· In view of our previous decisions, we hold that the failure of the judgment roll of the partition case in the United States Court for the Western District of Indian Territory to disclose the quantum of Indian blood of Sammie Naharkey does not prevent a successful collateral attack thereon.

It is also urged that as to the plaintiff, Millie Naharkey, a three-quarters blood Creek, the lands involved were unrestricted and the judgment was therefore valid as to her

Assuming without deciding that restrictions upon the alienation of plaintiff's undivided interest in the property did not exist at the time the partition judgment was entered, we are unable to approve the contention of the defendant. The partition proceeding was void because the court attempted to do something beyond its jurisdiction, namely, to partition the inherited lands of a full-blood Creek, the alienation of which was then forbidden. An anomalous situation would be created were we to decide that Sammie could recover the undivided interest of which the partition proceedings purported to deprive him, while the plaintiff could not recover from Sammie or his grantees her undivided interest which by forced exchange had been traded for the undivided interest taken from but subsequently recovered by Sammie. The judgment granting partition, being void as to one because it was in excess of the jurisdiction of the court over the subject-matter, was void as to all.

The plaintiff while a minor under guardian acquiesced in the partition proceeding, and through her guardian collected rents from the land herein involved. This action was commenced by her through her guardian before she attained her majority.

We are unable to perceive in this acquiescence the necessary elements of estoppel which would prevent her attack upon the partition judgment or preclude her recovery of the interest herein involved. Defendant's contention in this respect is denied. For elements essential to create an estoppel, see The Texas Co. v. Petitt, 107 Okla. 243, 220 P. 956; Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329. See generally Cobbey v. Buchanan, 48 Neb. 391, 67 N. W. 176; Schnell v. City of Chicago, 38 Ill. 382; 10 R. C. L. 752, et seq.

The defendant, Sand Springs Home, ac-

quired its title through mesne conveyances from Sammie Naharkey. It also procured a deed from Martha Naharkey. Apparently its title is good as to a 5/6th interest; at least, it is unquestioned in this case. Oil has been discovered and produced upon the premises. One phase of this litigation on the retrial of this case will involve an accounting for the oil thus produced. The plaintiff contends she is entitled to a full one-sixth of the oil produced. The contention is untenable. The defendant in accounting to the plaintiff is entitled to deduct from the market value of the oil produced the reasonable and necessary cost of developing, extracting, and marketing the oil. Moody v. Wagner, 167 Okla. 99, 23 P. (2d) 633; Earp v. Mid-Continent Petroleum Corp., 167 Okla. 86, 27 P. (2d) 855; Prairie Oil & Gas Co. v. Allen, 2 Fed. (2d) 566, 40 A. L. R. 1389.

The relationship between the parties and the principles governing an accounting are discussed in the above-styled cases in sufficient detail to enable the trial court to render a proper accounting without further discussion herein.

The judgment of the trial court is reversed, with directions to enter judgment granting to the plaintiff an undivided 1/6th interest in the land described in this opinion and render an accounting upon the evidence already introduced and upon such other evidence as the parties may offer.

OSBORN, V. C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and WELCH, J., absent. RILEY, J., dissents.