MILLER, Ex'r, v. SCOTT.

No. 18675. Opinion Filed Oct. 30, 1928.

Rehearing Denied Jan. 12, 1929.

McCrory & Monk and C. C. Mount, for plaintiff in error.

Charles A. Dickson, for defendant in error.

JEFFREY, C. This action was begun in the district court of Okmulgee county by Thomas Harvey Scott, as plaintiff, against Laurence D. Miller, executor of the estate of Robert G. Miller, deceased, for the recovery of the balance of purchase price under a contract to purchase an oil and gas lease on the southeast quarter of section 28, township 15 north, range 11 east. The cause was tried to the court without a jury, and judgment was rendered in favor of plaintiff for $8,000, the amount sued for. From the judgment the defendant has appealed.

On May 14, 1919, plaintiff, as party of the first part, entered into a written contract with Robert G. Miller and E. G. Hunter, whereby said first party agreed to make, execute, and deliver to second parties an oil and gas mining lease upon the above-described land for a period of three years, and as long thereafter as oil or gas is produced from the premises. The consideration to be paid by second parties was $16,000. The contract recited that it was agreed that first party was the owner of an undivided one-half interest in said land; and that $8,000 of the purchase price for the lease should be paid at the time of the execution of the lease. The contract further provided that if first party acquires a lease on the other one-half interest. he should be paid the balance of the purchase price upon the approval of the title to the same. The concluding paragraph of the contract is as follows:

"Before the deferred payment of eight thousand ($8,000) dollars mentioned in the above contract shall become due and payable, party of the first part shall furnish to parties of the second part an abstract showing that parties of the second part have a good and valid oil and gas mining lease upon the premises described in the above and foregoing contract, and until parties of the second part acquire a good and valid oil and gas mining lease covering the entire fee simple title and all the oil and gas rights thereunder, said eight thousand ($8,000) dollars shall not be due or payable."

There are several other provisions in the contract, but they are not pertinent to the questions here raised. It appears that at the same time the contract was made, an oil and gas lease was executed and delivered by plaintiff to Miller and Hunter covering the entire tract of land, and one-half of the consideration was paid as per the terms of the contract. It also appears that at said time an abstract of title covering the land in question was delivered to Miller and Hunter. The balance of the purchase price was not paid. Robert G. Miller having died, a claim was presented to the executor of his estate, and payment having been refused, this action was brought against Laurence D. Miller, as such executor. Upon application of plaintiff, and a showing by him that since the filing of the suit, he had conveyed the land in question and assigned all interest and rights in the action to E. St. Cyr, the court ordered the cause continued in the name of the plaintiff for the use and benefit of E. St. Cyr.

At the trial of the cause, plaintiff offered in evidence the contract, the oil and gas lease, and the abstract which had been delivered at the time of the delivery of the oil and gas lease. The abstract of title shows an allotment surplus deed from the Creek Nation to Abraham Taylor on part of the land, and an allotment homestead deed on the balance of the land. The next transfer disclosed by the abstract is a warranty deed by Lillian Hanson, nee Taylor, and husband, to Wright Thornburg, covering an undivided one-half interest in said quarter section. And then appears an entry of a transfer of a guardianship case of Sammy Taylor, a minor, from the United States Court of the Western District of the Indian Territory to the county court of Okmulgee. Following that entry, a proceeding is shown whereby Wright Thornburg brought action against Sammy Taylor. a minor, for a partition of the land. A decree in partition was entered, commissioners were appointed who reported that the land could not be partitioned in kind, and appraised it at $3,500. The land was sold in the partition proceeding. and Wright Thornburg elected to take Sammy Taylor's proposed interest for the appraised value. Thereafter, a sheriff's deed was executed and delivered to Wright Thornburg for the other undivided one-half in-

terest. The next and last transfer shown by the abstract is a warranty deed from Wright Thornburg and wife to Thomas Harvey Scott, dated February 23, 1909, and covering the entire tract of land.

Defendant contends that the abstract does not show good and valid title, or as the contract states it, "that parties of the second part have a good and valid oil and gas lease on the whole of the tract"; and that the balance of the purchase price, as provided by the contract, shall not become due and payable until such an abstract is furnished. At the trial of the cause, plaintiff sought to supply certain omissions by a witness who acted as attorney for plaintiff when the original contract was made. This witness testified that at the time the lease and abstract were delivered, it was verbally agreed between plaintiff and his attorneys on one side, and Miller and Hunter and their attorney on the other, that Sammy Taylor was an Indian of less than full-blood; and that soon thereafter witness procured from the office of the Five Civilized Tribes of Indians at Muskogee proof of heirship of Abraham Taylor, and proof showing the degree of blood of Abraham Taylor and Sammy Taylor, and gave them to the attorney for Miller and Hunter. To all evidence pertaining to the title, other than the abstract itself, defendant objected, and insists here that it was error to admit such evidence; and that he should not be compelled to accept a title resting in part in parol. As to the one-half interest which came by way of Lillian Hanson Taylor, it appears that there never was any objection.

The contract provided that, before the deferred payment of $8,000 should become due and payable, first party should furnish second parties an abstract showing that parties of the second part have a good and valid oil and gas lease upon the land therein described. "Good title" is synonymous with a good marketable title. 2 Words & Phrases (2d Series) 761. Such a title is one that is free from palpable defects, missing links and grave doubts, and should consist of both legal and equitable title. It is the general rule that, where a contract provides that the abstract shall show a marketable or good title, the vendor will not be permitted to show by evidence outside the abstract that the title is good. The vendor cannot resort to parol evidence to supply missing links or correct defects if by the terms of the contract he is to furnish abstract showing good title. Thompson, Title to Real Property, sections 5 and 7, pp. 7

and 8. The leading case in this jurisdiction on the question is that of Campbell v. Harsh, 31 Okla. 436, 122 Pac. 127, wherein it was held that a purchaser, under a contract to make a perfect title, is not required to resort to evidence de hors the record, but may stand upon the record, and will not be required to accept any other title than that shown to be good by the record or abstract. This court has many times had occasion to affirm the doctrine announced in Campbell v. Harsh, supra. Anmerman v. Karnowski, 109 Okla. 156, 234 Pac. 774; Hausam v. Gray, 129 Okla. 13, 263 Pac. 109. This rule finds support in the decisions from many other jurisdictions: Adkins v. Gillespie (Tex. Civ. App.) 189 S. W. 275; Brackenridge v. Claridge & Payne, 91 Tex. 534, 44 S. W. 819; Weaver v. Richards, 144 Mich. 395, 108 N. W. 385; Coonrod v. Studebaker, 53 Wash. 32, 101 Pac. 489; Boas v. Farrington, 85 Cal. 535, 24 Pac. 787; Danzer v. Moerschel (Mo.) 214 S. W. 849. The parties to the contract made it clear that the balance of the purchase price would not become payable until an abstract was furnished showing good and valid title, and defendant did not have to look beyond the abstract to determine what sort of title he was obtaining. And if the abstract did not show the character of title contracted, other evidence would not be admissible to show it, and defendant could not be said to have breached the contract, nor be compelled to respond in damages.

It is contended that the abstract tendered did not show good title in plaintiff. Numerous objections are pointed out, but since we have concluded that the judgment cannot be sustained, we shall only refer to some of them. One of the defects in the title complained about here is that the abstract does not show the quantum of blood of Sammy Taylor. Counsel says, and correctly so, that the district court of Okmulgee county had no jurisdiction to partition the inherited lands of Sammy Taylor if he were in fact a full-blood Indian minor. Coleman v. Battiest, 65 Okla. 71, 162 Pac. 786; Lewis v. Gillard. 70 Okla. 231, 173 Pac. 1136; Hoodenpyl v. Champion, 71 Okla. 270, 177 Pac. 369; Eysenback v. Naharkey, 110 Okla. 207. 236 Pac. 619. The quantum of blood of this Indian minor does not appear in the abstract, and the absence of such leaves the record title to at least one-half interest in the land in grave doubt.

Another objection, which seems to be well made, is that the abstract does not show a judicial determination of the heirs of Abra-

ham Taylor, the original allottee of the land involved. It is true that the petition and the decree in the partition action recited that Lillian Hanson Taylor and Sammy Taylor are the sole and only heirs of Abraham Taylor, deceased, but that was only an action between Wright Thornburg, who was grantee of the interest of Lillian Taylor, and Sammy Taylor, the minor. It did not attempt to adjudicate the rights of any one else, and certainly could not be binding upon others who might claim an inheritable interest in the estate of Abraham Taylor. In the case of Hausam v. Gray, 129 Okla. 13, 263 Pac. 109, plaintiff and defendant agreed to exchange lands, and each was to furnish the other an abstract showing merchantable title. Plaintiff's title depended upon a partition proceeding had in the district court, which found certain persons to be the heirs of a deceased owner, and purported to vest the title of all the heirs of the deceased in plaintiff by reason of a sheriff's deed issued out of that proceeding. Plaintiff's title was objected to for the reason that there had been no binding adjudication of heirship, and no showing that the debts of the deceased had been paid. Plaintiff attempted to cure the defect by furnishing a certified copy of an order of the county court showing that notice to creditors had been given; that claims against the estate were barred, and that the estate was free from indebtedness. The certified copy of the court order found the heirs to be as adjudicated in the partition suit of the district court, but the defendant refused to accept the title, and plaintiff filed suit for specific performance. The first paragraph of the syllabus in that case is as follows:

"Where parties to a contract to exchange properties agree to deliver abstracts of title to their respective properties showing merchantable title with the right of either party to correct defects, and it appears on the one hand that descent is necessary to be shown in the record of title, the furnishing of a certified copy of an order of the proper county court barring claims and determining heirship in correction of such defect, which does not appear to be a final decree closing the estate and does not show that the expense of administration has been paid, does not meet the condition of the contract to deliver an abstract showing merchantable title. And in an action in such case to compel specific performance of the contract, such relief will be denied."

Counsel for plaintiff contends that when the abstract was tendered, the attorney for Miller and Hunter raised only one objection and waived all others; that the objection made was that the district court did not have jurisdiction to partition the lands of Sammy Taylor, although he was an Indian minor of less than full-blood; and that soon thereafter this court, in the case of Salmon v. Johnson, 78 Okla. 182, 189 Pac. 537, directly held that district courts did have jurisdiction to partition inherited lands of Indian minors of less than full-blood. That, in addition, plaintiff brought an action in the superior court of Okmulgee county against Sammy Taylor, a minor, and secured judgment quieting his title. Certain evidence was admitted at the trial over the objection of defendant, which was offered for the purpose of showing a waiver of the defects now complained of. The evidence admitted was that the attorney for Miller and Hunter objected to the partition action without making other objections, and that Miller and Hunter later assigned what interest they had under the lease. We do not agree that this evidence was sufficient to show a waiver of the defects if the evidence had been admissible. Plaintiff relied on a full performance of the contract on his part. This the defendant denied under oath. Plaintiff did not rely upon a waiver of any terms of the contract, or defects in the title, and did not plead waiver. The doctrine of waiver is not available to establish a cause of action or defense, unless the facts constituting same are pleaded. Moran v. Pryor, 117 Okla. 260, 246 Pac. 448; Clem Oil Co. v. Oliver, 106 Okla. 22, 232 Pac. 943; Indiana Harbor Belt R. Co. v. Britton, 56 Okla. 750, 156 Pac. 894. The evidence was clearly inadmissible, and will here be treated as not having been admitted by the court.

Plaintiff relied for a recovery upon the written contract, and a compliance therewith on his part having been specifically denied by defendant, it was incumbent upon him to prove a compliance. We do not here attempt to pass upon plaintiff's title to the land, but hold that he did not furnish abstract of title showing a good and valid title to the land in himself, nor a good and valid oil and gas lease in Miller and Hunter in compliance with the provisions of the contract.

The judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to enter judgment in favor of the defendant Laurence D. Miller, as executor of the estate of Robert G. Miller, deceased.

BENNETT. HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.